We will start this morning with the case of Aquino v. Attorney General, No. 21-3317. Ms. Norton, when you're ready and for purposes of speaking, feel free to remove your mask. May it please the Court. Stephanie Norton for the Seton Hall Law School Center for Social Justice, on behalf of Petitioner Johan Gonzalez Aquino. May I reserve three minutes of my time for rebuttal? Granted. Your Honors, this case is fundamentally about the procedural rights due to individuals facing deportation, particularly individuals like Mr. Gonzalez who are fighting their deportation from detention and without an attorney. There are several issues in Mr. Gonzalez's case, but today I want to focus on three. First is the immigration judge's failure to adequately develop the record, as this Court requires. Second is the fact that Mr. Gonzalez was forced to proceed with a de facto telephonic hearing without ever giving his consent, which is in direct violation of the agency's own regulations. And third is the immigration judge's decision to ignore relevant evidence that was in the record and to issue a purely conclusory decision contrary to this Court's instructions in maire. Didn't he say specifically in Serrano that we do not have, that there is no obligation to fully develop the record? He says we have not held it and we do not do so today, recognizing other courts have, but we do not have that obligation? At the time of Serrano, Alberta, that is correct. However, more recently in the Garmendia v. Attorney General case, the Court did recognize that if an immigration judge failed to adequately develop the record, that could be a due process violation. But what was the failure here? What more should the immigration judge have done? When he responded, she'd say, and so, and she would ask him to further complete. This wasn't like she was railroading him and preventing him from answering. I'm not sure exactly what you want her to have done. So from the very outset of the proceedings, she should at the very least have explained what Mr. Gonzalez was expected to prove. She told him that he was eligible for deferral of removal under the Convention Against Torture, but she didn't tell him what that meant. She didn't tell him that he would have to prove first that it was more likely than not that he would be tortured if he were removed. Well, that's a different issue. It's not a failure to develop the record. It's a failure to alert him to what he had to prove. That's a different claim, isn't it? So in other circuits, including the Fourth Circuit and Quintero had said, and the Second Circuit as well, that explaining what the relevant legal standards are and explaining what kind of proof can be used to meet those legal standards is part of a duty to develop the record. Because if the immigration judge does this from the outset, then the non-citizen is on notice of what kind of evidence he's expected to produce. And he can do that before the hearing begins. What additional evidence do you submit he would have produced if he'd gotten an etiquette warning? The problem with this violation is that now, on appeal, we can't introduce new evidence. You can't, but do you have an offer of proof as to what you would introduce or would have introduced? I can tell you the questions that the immigration judge should have asked Mr. Gonzales, and that answers to those questions could have changed the outcome of the case. For example, Mr. Gonzales said that he was threatened by a well-known and dangerous criminal group. But the judge never asked him what the name of that group was, how large the group was, what its geographical reach was. This could be the most well-known group in the Dominican Republic that is known to have ties with Dominican public officials. And if that's the case, then Mr. Gonzales could very well be eligible for relief. But we don't know the answer to that question because the immigration judge never asked it. But she did say, she did alert him before the hearing that he had to fill out the form and provide specific details about what happened to him, and he's going to have to produce evidence. Didn't that let him know, you know, who, where, when, what? These are the kinds of things you have to provide. The problem is that the form that he filled out didn't explain what cat relief actually meant. He knew that, you know, at a most basic level, he had to explain why he was afraid to return to the Dominican Republic. But he knew nothing about the requirement of government acquiescence, what that meant that he had to show ties between the people he was afraid of and government officials. And so he went into the hearing completely blind. And, in fact, the immigration judge never asked him a single question about that issue. She just concluded in her decision that he hadn't produced any evidence. And that is, that's not fundamentally fair. But the prosecution did ask questions along those lines about why he believed that the government would, in so many words, acquiesce, and whether there was any sort of relationship that he knew of with the potential perpetrators and the government. And he provided answers to those questions that don't seem to leave room for a finding of acquiescence. What do we do with that, assuming that a finding of prejudice is required? The first problem is that we shouldn't be relying on the prosecution to adequately develop the record. Every time Mr. Gonzalez mentioned something that was potentially relevant, the government attorney changed the subject. When he said that he was attacked by this well-known dangerous criminal group, the attorney shifted to another point. And, actually, there is evidence in the record, including an affidavit from seven individuals from Mr. Gonzalez's hometown, including the mayor, confirming that he was threatened by this group and that the group was never prosecuted. So, at the very least, the immigration judge should have followed up to see if there was anything more to be developed on that point. But if the mayor is on his side, that almost shows that he's going to be protected by the government, doesn't it? The mayor is essentially admitting that he can't protect him. He's saying that his life would be in danger if he comes back, which is presuming that there's nothing the mayor can do to protect him from this group. Isn't the fundamental problem that that was a threat from 14 years ago, and the only other one was also from several years back with no further contact since? So the first threat, I believe, was from nine years ago. But as Mr. Gonzalez told the government attorney, it wasn't just any kind of threat. This was a serious threat from a very serious group. And we don't know even the details of that threat. Was he threatened at gunpoint? Is this group well known for following through on these types of serious threats? We just don't know the answers to those questions. We also don't know the details of the more recent threats that he's received from this family who wrongly believes that he was involved in a murder. We don't know how many times the family has threatened his family. We don't know what those threats contain. We just don't know. But wasn't it up to him to come forward? I go back to the question that Judge Bevis asked. You've got to show prejudice here. So what would have happened differently? What would he have done had he been advised you need to produce evidence of acquiescence, you need to do? What is there he would have done differently? Well, he was prejudiced because he was deprived of the opportunity to do that. Deprived of an opportunity is another way of saying you don't have to show prejudice, which works if you get us to extend Leslie, but doesn't work if you don't. And so you can comment some on why we should read Leslie this broadly, broader than any presidential opinion of our court has. Am I right that there's no presidential opinion of our court that applies Leslie beyond the right to counsel? That's correct, Your Honor. And we're not arguing. Why should we read it beyond that? It's completely out of step with the way we approach criminal rights, where most fundamental criminal rights, you've got to show prejudice. There's a harmless error doctrine. There's a tiny universe of structural errors where we just presume it, but not for, you know, asking questions or developing the record or things like that. We say, okay, tell us what this would have developed. And why should it immigrate constitutional statutory regulatory rights be broader in the immigration context than in the constitutionally protected criminal context? Your Honor, just to clarify, we're not asking you to extend Leslie. We're asking you to adopt the same approach that the Fourth Circuit and the Second Circuit have adopted, which is to say that in most of these cases, when an immigration judge fails to adequately develop the record, you can presume prejudice. Not in every single case. In some cases, there's no possibility that the noncitizen is going to be able to meet Leslie. Either there's an irrebuttable presumption in which case it's Leslie or not. And what the government says is, look, DHS counsel asked a bunch of questions. Gonzalo Zucchino put on some evidence. You know, he put on the affidavit, the notarized report. So why isn't that enough? Why isn't it then on your client to say what else? What else would have come? Otherwise, is it going to collapse into an extensional Leslie? The problem is he didn't know what else he needed to produce because that was never explained. If you look at the evidence he did produce, most of it is about his family ties in the United States and his rehabilitation efforts. And none of that is relevant to a cat claim. But he didn't know that because the immigration judge never told him. But the fact that he didn't know at the time doesn't prevent him on appeal from saying, listen, had I known, I would have done this. And he didn't say he said he didn't know why his father hadn't sent in the affidavits. He obviously knew he was going to produce one. But we still don't know, okay, what is it that he would have done? And certainly that's something that he could think of after the fact. Well, had I known, I could have gone here and gotten the names of these people because it's readily available and I could have done this, but I just didn't know. He did say that. He did say, if you need the names of these people, if you need the names of this group, I can provide them for you. But the immigration judge never asked for them. She similarly easily could have left the record open so that he could submit an affidavit from his father. Didn't she ask, what are the names of the people? And he said, I don't know. He said, I can get those for you if they're important. But she didn't give him an opportunity to do that. Similarly, she didn't give him an opportunity to submit an affidavit from his father. He's had time between then and now to come forward with those, to argue those on appeal to the BIA and to the petition. What specifically is there that we should consider that these people would have said? The problem is that there's no procedural mechanism on appeal to introduce new evidence. I can tell you that I have a specific letter from the mayor of his hometown which details these threats more specifically. All right. You can say, if we were to grant the petition in remand, you would be able to show what? I would be able to show a letter individually from the mayor of his hometown detailing the threats against him and the mayor's belief that his life is still in danger. Does it establish anything being done by or with the acquiescence of the government? Because that's a gaping hole in your case right now. It shows that the group that threatened him was never prosecuted. OK. That does not by itself establish that it was by or with the acquiescence of the government. It certainly suggests that there were potentially ties between this group and the government, particularly because we also have the State Department report in the record which says that there is rampant corruption in the Dominican Republic, including between criminal organizations like the one that threatened Mr. Gonzales and government officials, and that people were tied. Do we know the name of the one that threatened Mr. Gonzales, and is it listed in the State Department report? I do not know the name of the group that threatened Mr. Gonzales because I only recently took his case and was not able to have this discussion with him. But if we are able to assess the name of the group, then presumably there will be publicly available information about it. The point is that Mr. Gonzales should at least have the opportunity to have a fair hearing, to have a fair shot. I want to clarify one point that you were making a moment ago, because at least with the issue of advising Mr. Gonzales Aquino as to his evidentiary rights, you did seem to be arguing that that was a per se due process violation and that there wasn't a need to show prejudice under Leslie. Are you now withdrawing that argument? No, Your Honor. I believe we are still making that argument that there was a regulatory violation of 8 CFR 1240-10A4 for the failure to advise him of his evidentiary rights. But the judge's failure to explain what he needed to prove and how he might be able to prove it is also part of her duty to develop the record. And those things don't need to be mutually exclusive. So you say there's this gap and no one alerted him that he needed anything, so maybe we might find out more. But when I look at AR 194, you quoted Mr. Gonzales Aquino in your brief saying, if they have a relationship with the government, I trust the government won't do anything to avoid my being harmed. You avoided quoting the next two lines right after that where Mr. Miller said, but you won't know or have any proof that such relationship exists, correct? Mr. Gonzales Aquino said, correct. So this is not a situation where he needed to be asked and there was something lurking out there. In the passage right after you truncated your quotation, he admits he's got nothing tying this to the government. So just two points. First is that if he had been informed before he had an opportunity to submit evidence, he might have asked his family about whether there were any ties between this group or the family that was threatening him and the government. Now you want to create an obligation for the judge to do this before the hearing, not at the hearing. Yes. At the time that she tells the petitioner that he is eligible for a certain form of relief, she should tell him what exactly that means and what he needs to prove to gain that relief so that he can submit meaningful evidence. The existence of that evidence, it sounds like, is purely speculative. These are things that he perhaps could have done and perhaps could have obtained that information from family members. But you're you're not in a position to say that he would have and there was that information even available. Is that right? The point is that he should have been given the opportunity to get that evidence. And that is what a fundamentally fair hearing means. And an immigration judge has to have an adequate factual basis to make a correct decision. But she didn't have all the facts here because she didn't give Mr. Gonzalez a chance to develop those facts. Doesn't the form I-589 ask for this type of information? It does not ask anything specifically about government acquiescence, because that's a very specific inquiry to a cat claim as opposed to an asylum claim, which is why it's important that the immigration judge explain what cat actually means. OK, thank you. We'll hear from you in rebuttal. Mr. Lemberg. Please. The court, Robert Lemberg for the attorney general of the United States. To prevail on due process, the petitioner must show that he was prevented from reasonably presenting his case. He has not shown that he was prevented from presenting his case. As the court pointed out in Serrano, where due process prevents an alien from making his case, it's the judge actively interrupting while the petitioner is trying to provide evidence, and that's what happened in Serrano and in the other cases that the petitioner relies on, and that's not what happened here. He also must. Counsel, when she's telling him what he's going to have to do, because he's not with counsel, she says we're sending him the form. Once you receive it, you'll need to complete it and provide a very detailed explanation regarding the nature of your fear. And it's not based on hypothetical or suppositions. You need to provide very specific details and evidence in support of your claim. So you have to produce evidence about the nature of his fear. What put him on notice that he really needed to show that the government would acquiesce in whatever torture was going to come his way? I believe Your Honor is quoting from page 162 of the administrative record. In the preceding paragraph, the court does give him notice, and if I could quote at length here, she says, Now, sir, the only form of relief that you may apply to seek before the court is that of deferral or removal pursuant to the Convention Against Torture. She continues that whereby you need to establish that it is more likely than not that you would be tortured, if not by the government, but at the consent, acquiescence, or willful blindness of the government if you return to the Dominican Republic. That's the notice of his burden of proof in this case. She then goes on to ask and clarifies that burden of proof. She asks him, Do you have any reason to believe that you will be subject to some form of torture if you return to the Dominican Republic? That is, that you will be subject to suffer inhumane treatment rising to the level of torture as defined under the Convention Against Torture. And he says yes. He says yes. Okay. But the form itself that he filled out doesn't provide for that. The form refers specifically to protection under the Convention Against Torture, and it also refers to instructions that accompany that form that discuss his burden or excuse me, his basis for eligibility, which is his burden of proof and the elements he needs to meet for protection under the Convention Against Torture. So that was included with the form? Those instructions are not in the record, but there is direct reference in several places on the I-589 form to those instructions. The form that the petitioner completed was a fillable form, so it's apparent that he went online or his family that helped him fill out that application went online, and those instructions are available there at the same place that the fillable form is available at. The form also directs the petitioner to produce documentary evidence to support his claim and also to submit answers to responses that specifically direct him to explain the threat. So a petitioner here argues he didn't know or he would have presented information about the contents of those threats. That was his opportunity, his notice and opportunity in that application to submit specific information about the contents of the threat and also the dates of the threats. The petitioner argues that, if given another chance, he would discuss when those threats occurred, the frequency, when he received the last threat. In fact, the petitioner faults the immigration judge for not asking when the last threat took place, but government counsel specifically asked him, when was the last threat you received? He provided a nonresponsive answer, but that was his opportunity to present that evidence. So he was given that opportunity. The form allows for narrative answers, big blocks. He used a fraction of that form with one-line responses to those questions, prompting him to provide details. The form also anticipates attaching supplemental pages if you run out of space. So can you speak to the argument about the absence of any need for a showing of prejudice, where you have a mandatory requirement that's set out both in the statute and regulation that goes to the fundamental fairness of a hearing? And how, if we go just point by point through the reasoning of Leslie, doesn't that map on precisely to the failure to advise here as to his evidentiary rights? Well, the statute, Your Honor, I believe requires a reasonable opportunity to present his case. He was afforded that opportunity. The proceedings lasted, spanned from, I believe, May of 2019 through February of 2020. So from that initial hearing, actually his notice of rights began with the NTA. But the immigration judge is required to advise him of that right. Yes, and he received written notice of those rights. The back of the NTA, the notice to appear, and also the form I-261, which he both signed for acknowledging receipt, those lay out his provided written notice of right to counsel, right to provide and present documentary and testimonial evidence, notice of rights to admit or deny any or all allegations, a right to examine and object to government evidence and to cross-examine government witnesses, a right to a reasonable opportunity to make an application for relief, and also a right to appeal any adverse decision. So he took two forms in the record to demonstrate that he received those rights in writing. He indicated that he's fluent in English, and he received those notices. But that's to say that there is, from the government's perspective, there's no prejudice. But the argument that's been made here is that regardless of a showing of prejudice, if the immigration judge herself did not advise the respondent of those rights, that that's a per se due process violation along the lines of Leslie. How is the mandate here in the regulation different from that in Leslie? Well, the fact that it is a regulation. It's not a statutory obligation to provide those, the ideal hearing. That was true in Leslie as well. I'm sorry? Wasn't that true in Leslie as well? Yes, the regulatory requirements to provide notice of right to counsel. But that is, Your Honor, constitutional. It's not that it's just in that regulation, but that is a constitutional right. And here the petitioner received that right to counsel, a right to have his charges read in layman's terms, the right to, and I'm looking at the regulation here, examine and object to evidence, place the respondent under oath, read the factual allegations in non-technical terms. These are all the regulatory rights here or directions to the immigration judge to provide these. But I don't take the petitioner here to be arguing that all of those fall into the same category. They're arguing specifically that the failure to advise as to evidentiary rights, to comply with that regulation is a per se due process violation because it is fundamental to be advised of your ability to put on evidence and of the opportunity that you will have to cross-examine witnesses against you. Those go to the fundamental fairness of the hearing, as they argue, and so it does go to a constitutional right, as in Leslie. How are they really different? Well, I don't have an answer for how they're different, but it's the governor's position that he received those notices in writing, and most of them orally. His obligation to present evidence, testimonial and documentary evidence, also his right to call witnesses. The immigration judge gave that to him orally. When she set the evidentiary hearing, she said, if you want to call any witnesses, they'll have to appear here and I want a declaration from them ahead of time. But that's notice of his opportunity to present evidence on his own behalf, and he's demonstrated notice of those evidentiary rights by submitting documentary evidence. He also submitted a three-page declaration to the immigration judge, handwritten, in advance of the hearing. Now, he chose not to avail himself of the right to present evidence about his claim. He chose, as counsel noted, to discuss his rehabilitation from his criminal conduct, but he had both notice and opportunity. He just didn't avail himself of those opportunities. Let's talk a little bit about the video and teleconferencing claim and whether we should think of what is presented in the record here as reverting to a telephonic hearing, or is it properly considered as a defective videoconference? Well, it's not a telephonic hearing in that the immigration judge could see him. He was not able to see the immigration judge, as he notes, or DHS counsel or the interpreter. It would be relevant if there were demonstrations or references to physical evidence in the courtroom, or if he had called a witness or if the government had called a witness and he was not able to see that witness testifying. But that's not the case here. The immigration judge could see him throughout the entire hearing, hear him throughout the entire hearing, and indeed made no adverse findings related to his demeanor. She said she found him credible. So the fact that he could not see the immigration judge is unfortunate. We all want an ideal hearing where the technology runs smoothly, where interpretation is seamless and doesn't get in the way of the testimony. But the fact that he wasn't able to see the immigration judge does not rise to the level of a due process violation. He complains that the judge renumbered exhibits in the middle of the hearing, but that's irrelevant because, again, there was no reference to any of those documents in the hearing. They were his exhibits, weren't they? Some of them were his exhibits. It's not clear who submitted the State Department report, but that was one that was renumbered, and I believe his letter was renumbered. But, again, that letter did not go to his claim, and the judge nor DHS counsel did not reference any of those exhibits during the evidentiary portion. He submitted State Department reports, didn't he? He could have. I'm not sure. It's not clear from the record, but the judge entered it, and it's part of the evidentiary record. Is it the government's position that Mr. Gonzales Aquino actually consented to proceed with the one-way video? He did. He notified the judge that he could not see what was going on in the courtroom, so she tried to remedy that by reconnecting. On the second attempt, he still could not see, and she said, in essence, we're going to have to go forward. We can see you perfectly, and we can hear you. And he said, okay, there's no problem. That could be construed as consent, but I'm not going to ask the court to find that that is consent. What I'm asking the court to hold, essentially, is that there was no prejudice because of that malfunction, because there was no adverse ruling based on demeanor or credibility, as I mentioned. And there was no prejudice as related to any of the exhibits. She said, so we have to proceed, okay, but I can see you okay. And he says, okay, then there's no problem. And she says, you can hear us well, right? Can you hear us? And he said, yes. So she says, and he says, yes. It doesn't seem like he registered an objection. He did not raise an objection. That's correct. What about the Myrie issues that are raised by the petitioner here? And what do we do with the immigration judge's failure to go through a full Myrie analysis? Your Honor is correct. The immigration judge did not expressly state that she was following the framework of Myrie. I would draw the court's attention to the board's decision, which did analyze the immigration judge's decision through the framework of Myrie. There are four or five paragraphs in the board's CAT analysis where it first lays out, accurately states the framework of Myrie. And then in the following paragraph it says, we discern no clear error in the immigration judge's finding, connoting this analysis that follows, is a review for error in the factual findings. And it cites a matter of ZZO, which says, we now hold that an immigration judge's predictive findings of what may or may not occur in the future are findings of facts, which are subject to clearly erroneous standard of review. So the board is very clearly engaging in the Myrie framework, goes through all of the facts, finds no clear error. And I would note in that finding the fact that the petitioner does fault the agency for not considering his age at the time of the initial one-time threat in 2009, but the board does go through his age at the time and still finds that that did not amount to past torture. In the next paragraph, we discern no clear error in the finding of the government will not engage in acquiescence. And then in the concluding paragraph, in accordance with Myrie, the board says, based upon the evidence in the record, we agree with the immigration judge. So no clear error for the two separate factual findings, no future torture, no acquiescence. And then without deference, re-analyzes the legal conclusion and says, we agree with the immigration judge that he failed to demonstrate acquiescence. And as Judge Bevis noted, that's the hole in this case. If respondent got his request and could go back and do his hearing over again, he might add more details, which he had an opportunity and notice that he should have provided. But there's still no evidence of acquiescence here. And we would ask the court to deny the petition. Thank you. Thank you. Ms. Norton, could you start by addressing why the board's fairly thorough Myrie analysis doesn't cure any defect in the immigration judge's analysis? Yes, Your Honor. Because the Myrie analysis requires, first, a factual finding as to what would actually happen to the petitioner if he's removed, then a legal conclusion as to whether that constitutes torture. Similarly, requires a factual finding as to how government officials would respond to the torture and a legal conclusion as to whether that constitutes acquiescence. The immigration judge has to make those specific predictive factual findings. She can't jump over that step. And the board can't fix that error because the board can't make factual findings itself. And this court has time and time again said that immigration judges cannot collapse these steps. They actually have to go through each one of them. And that's because the steps require the judge to, they show that the judge has meaningfully considered the evidence in the record. And they create something for appellate courts to meaningfully review. But when you have a conclusory finding like you do in this case, there's simply no indication that the immigration judge actually meaningfully considered what was in front of her. But isn't that subject to harmless error? Yes. Harmless error means that there has to be no reasonable possibility that the outcome could be different. That might be true in a case where say the petitioner fears general country conditions in their country of origin. There's no chance that they could produce additional evidence to support their claim. That's not the case here. There are strong suggestions in the record that Mr. Gonzalez is eligible for relief. Well, except for the acquiescence piece. There's nothing there about acquiescence. So in the affidavit from the mayor, it says that the group that threatened him was never prosecuted. And in the State Department report, it says that corruption, including with criminal organizations, is rampant in the Dominican Republic. But it doesn't name the group. And when he's asked at the hearing whether he is aware of any evidence tying this to the government, he says no. Well, he may not have read the letter from the mayor saying that this group was the one that's not currently in the record that says this group was never prosecuted. So what is it about this group that ties it to the government? We don't know because he was never asked. We don't know. So the letter doesn't supply that defect either. If we eventually know the name of this group, there will be publicly available evidence that can answer the question of whether it's tied to the government. The point is that Mr. Gonzalez should at least have the opportunity to have a fair hearing. Not that he is necessarily 100% going to win at that hearing, but that we want an immigration system where non-citizens are given a fair shot to actually prove their case. Not that they're going to win every time, but that they at least have a chance to produce evidence in support of their claim. Ms. Norton, your colleague on the other side of the aisle has pointed out that even if there are specific explanations that the immigration judge herself didn't give, that when you combine things like the I-589 and accompanying forms that, although not in the record, are the type of thing that we can take judicial notice of, do provide the information about the rights and what needs to be proven. Why isn't that sufficient to meet the obligations that you've highlighted in your brief? So first, it's not sufficient because the plain language of the regulation clearly states that the immigration judge has to advise respondent of his evidentiary rights. And second, because respondent says in his, sorry, Mr. Gonzalez says in his notice to appeal that he was in detention. He didn't have access to the internet. He couldn't go online and look deep into the hyperlinks in this application to find out what his rights were. His family may have assisted him in doing that. He says he didn't have access to an immigration law library while he was in, he was in federal prison at the time of this hearing. So he may have had some assistance from his family, but it's not enough for the judge to rely on his family, potentially helping him find his rights buried deep in a form, especially when there's a very clear regulation that the immigration judge was on notice of that said that she had to follow this rule. And that's why the rule in Leslie exists. That's why Leslie says when there is a very clear regulation promulgated to protect an important statutory or constitutional right, there is no prejudice required. The judge has to follow those rules every time because we don't want a system where a judge thinks that they can break the rules and there will be no consequences. Which regulation specifically are you relying upon? Could you read it to me? With respect to the failure to advise Mr. Gonzalez of his evidentiary rights, that's at 8 CFR 1240A4. And what does it say? It says that the immigration judge must advise the respondent that he will have a reasonable opportunity to examine and object to the evidence against him and to present evidence on his own behalf. Okay. And she did that. She did that in what we were referring to on 162. Is this? What more should she have said? She said you will have the right to do this. You have to produce evidence. You have to produce burden, you know, that the government would consent. She told him that. I'm not sure what additional burden that specific regulation puts on her. The key language in the regulation is reasonable opportunity. She may have read what the law says, but she didn't explain to him what that actually meant. But wait a minute. Reasonable opportunity doesn't mean she has to explain to him exactly what he has to do. She says you will have a reasonable opportunity. I'm just not sure how you translate that into her having to tell him chapter and verse of what he has to do. Reasonable opportunity means that he actually has that reasonable opportunity, that he understands what he needs to do, and he didn't understand what he needed to do as evident from the declaration that he submitted, which is basically a cry for mercy. He did produce evidence, and he testified. I'm just not sure that that regulation does everything that you want it to do, but that's kind of rested aside. Just one point on the other regulatory violations here, first being of the regulation at 8 CFR 1003.25C, which very clearly provides that an immigration judge can only go forward with a telephonic hearing if she advises the respondent of his right to proceed. There was no telephone involved here. This was not a telephone. It was a video link that was partly defective. So a video telephonic hearing has two components, video and audio or telephone. Here the video wasn't working, so we can't say that this was a video hearing. The video wasn't working for Mr. Gonzales. Okay, so what in the reg requires that it be two-way video rather than one-way video? It's simply that you cannot say there was a video hearing at all if one party was not able to see the other. That's not a video hearing. The government has taken the position in any event that it's not relying on consent. It's relying on lack of prejudice. So lack of prejudice is not required for this violation because the regulation very clearly needs to state or very clearly says that the immigration judge needs to advise them of his right to proceed in person or by video and that he needs to give consent. It says for video, an immigration judge may conduct hearings through video conference to the same extent as he or she may conduct hearings in person. The consent is only as telephones. But this was a de facto telephonic hearing because the video function was not working. That only leaves the telephonic function, which means that it was a telephonic hearing. But he did say okay. That's not informed consent because he was never told, well, we don't have to go forward like this. We could reschedule the hearing to another day when the video technology is working. So he didn't know that he had the right to say no. He was simply told we have to proceed, and he politely acknowledged okay. That's not what the plain language of the regulation requires. And there is no prejudice required here because of the framework in Lesley. Okay. Thank you, counsel. We understand your argument. We will take the case under advisement. And our thanks to both counsel for a truly excellent argument today and briefing. And a particular thanks to Seton Hall Law School for not only taking on this pro bono service of representation, but also for providing to these young lawyers the professional development opportunity of arguing before a court. That is a service that behooves all of us. We will request a transcript, and we'll have an order put out along those lines. Thank you, counsel. And we'll move on to the next case of the day.